**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JESSICA DAUBER, | : |
| | : Civil Action No. |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ABC CONSTRUCTION COMPANY, INC.; | : Jury Trial Demanded |
| MIKE NUGENT, *individually*; | : |
| KIM NUGENT, *individually*; and | : |
| DAN SCHWARMER, *individually*, | : |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff, JESSICA DAUBER, as and for her Complaint against the above-named

Defendants respectfully alleges upon information and belief the following:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated against by her employer solely due to her sex/gender and sexual orientation, and retaliated against based on her protected activities.

## JURISDICTION AND VENUE

2. Jurisdiction is proper over this matter pursuant to 28 U.S.C. § 1331 as this action involves a Federal Question arising under the Civil Rights Act of 1964. This Court has supplemental jurisdiction over the state and city causes of action, as they arise from the same nucleus of operative fact.

3. Venue is proper over this matter pursuant to 28 U.S.C. § 1391(b) as Defendants employed Plaintiff in the Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, many of the events at issue in this matter took place in the County of Philadelphia, in the Commonwealth of Pennsylvania within the Eastern District of Pennsylvania.

4. Around January 10, 2022, Plaintiff dual-filed a Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"), Pennsylvania Human Relations Commission ("PHRC"), and Philadelphia Commission on Human Relations ("PCHR").

5. Around February 13, 2023, the EEOC issued Plaintiff a Notice of Right to Sue.

6. This action is being commenced within ninety (90) days of Plaintiff's receipt of the EEOC Right to Sue Notice.

## **PARTIES**

7. Plaintiff JESSICA DAUBER (hereinafter "Plaintiff" or "DAUBER") is seeking damages to redress the injuries she has suffered as a result of being discriminated against, sexually harassed, forced to endure a hostile work environment, and retaliated against by her employer on the basis of her sex/gender (female) and sexual orientation.

8. At all times material, Plaintiff DAUBER was an individual female residing in the County of Montgomery within the Commonwealth of Pennsylvania.

9.  At all times material, Defendant ABC CONSTRUCTION COMPANY, INC. (hereinafter "ABC" or "Defendant") was and is a domestic business corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania.

10. At all times material, Defendant ABC operated and continues to operate a construction facility located at 714 Dunksferry Road, Bensalem, PA 19020.

11. At all times material, Defendant ABC and its employees performed construction work within the County of Philadelphia.

12. At all times material, Defendant MIKE NUGENT (hereinafter referred to as "Defendant" and/or "M. NUGENT") was and is an owner of Defendant ABC.

13. At all times material, Defendant M. NUGENT held supervisory authority over Plaintiff.

14. At all times material, Defendant KIM NUGENT (hereinafter referred to as "Defendant" and/or "K. NUGENT") was an owner of Defendant ABC.

15. At all times material, Defendant K. NUGENT held supervisory authority over Plaintiff.

16. At all times material, Defendant MIKE SCHWARMER (hereinafter referred to as "Defendant" and/or "SCHWARMER") was employed by Defendant ABC.

17.  At all times material, Defendant SCHWARMER held supervisory authority over Plaintiff.


## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

18. Plaintiff claims a continuous practice of discrimination and claims a continuing violation, and makes all claims herein under the continuing violations doctrine.

19. Plaintiff seeks damages to redress the injuries she has suffered as a result of being discriminated against by her employer on the basis of her sex/gender and sexual orientation, being subjected

to a hostile work environment, and being retaliated against for reporting and opposing such discrimination and harassment.

20. Plaintiff is an individual female who at all times material identified as a lesbian.

21. Around August 2020, Defendant ABC hired Plaintiff to work as a tri-axle truck driver for full-time work on various construction projects to be performed within the greater Philadelphia region.

22. At all times material, Plaintiff was a union member of Teamsters Local 107 with a mailing address of 12275 Townsend Road, Philadelphia, PA 19154.

23. From the outset of Plaintiff's employment, Defendants' employees engaged in ongoing, pervasive harassment towards her based on her sex and sexual orientation.

24. By means of example, Plaintiff's coworkers regularly made sexual jokes, engaged in harassing "banter," and demeaned Plaintiff over the radios used by Defendants' employees.

25. Furthermore, as detailed below, Defendants treated Plaintiff differently than her similarly situated straight male coworkers due to her sex and sexual orientation.

26. Defendants also maintained a generally hostile and discriminatory work environment, allowing employees to use racial slurs in the workplace with impunity, which regularly made Plaintiff uncomfortable.

27. Around March 20, 2021, Plaintiff began working on a paving job with Defendants at the Philadelphia International Airport.

28. Defendants provided Plaintiff with a "BRN" Automatic truck, which is a newer model truck. Upon information and belief, BRN is a subsidiary of Defendant and thus provides equipment when necessary to ABC's employees.

29. Other employees of ABC were given an ABC truck, which were typically slightly more outdated vehicles.

30. After Defendant did so, Defendant's employees Dave Moran and Defendant SCHWARMER made jealous and angry comments about wishing they were provided the truck due to their "seniority." At one point, SCHWARMER sneered at Plaintiff and said "of course you got the best truck."

31. Plaintiff responded to the employees by stating she was given a BRN truck simply because it was available at the time Defendants hired her.

32. In response, Defendant SCHWARMER stated that "your father must have gotten on his knees and sucked Mike's [Nugent's] dick to get this truck."

33. Defendant SCHWARMER stated that Plaintiff's father performed oral sex on Defendant M. NUGENT in order to obtain special favors for his daughter; in this case, a more updated work vehicle.

34. This sexually crude comment shocked and disgusted Plaintiff, as M. NUGENT and her father were close friends. Moreover, neither Plaintiff nor her father had anything to do with the assignment of vehicles, which was left to ABC and BRN's discretion.

35. In addition to SCHWARMER's comment, similar sexually pervasive and demeaning comments continued to be directed towards Plaintiff throughout the business day and onward.

36. On one occasion, Leroy Hinton ("Hinton"), the shop steward, even approached Plaintiff and stated that he "heard through the grapevine you've been having difficult time with some of the guys." Around this time, Defendant K. NUGENT also approached Plaintiff, who informed K. NUGENT of the constant heckling and harassment.

37. Plaintiff also reported to Defendant K. NUGENT the comment that SCHWARMER made about her father "sucking Mike's dick to get this truck."

38. Plaintiff even offered to swap trucks with any male employee in attempts to have the harassment stop.

39. In response, Defendant K. NUGENT told Plaintiff and Hinton that she hoped to get rid of SCHWARMER "someday" but for now to "just forget about it."

40. Further, Defendant K. NUGENT told Plaintiff that "We care about you. His comments don't matter, so just ignore him."

41. Despite her statements, Defendant K. NUGENT ignored Plaintiff's complaints and simply instructed her to "pay no mind" to SCHWARMER'S sexually harassing and pervasive comments.

42. On another occasion, Plaintiff called Hinton over the radio and informed him that the air conditioning in her truck was not working. Leroy instructed Plaintiff to take her truck to the auto shop for the air conditioning to be fixed.

43. Because this was a company radio, every employee of Defendants was notified of this routine and common exchange between the two employees.

44.  A few days following this incident, SCHWARMER approached Plaintiff's brother, also a truck driver, and said that Plaintiff was causing problems and intentionally making trouble for Defendants. Plaintiff's brother then relayed this information to her.

45. Plaintiff did not want to cause trouble with Defendants and approached SCHWARMER and asked him what he meant by his statement to her brother. Additionally, Plaintiff informed SCHWARMER that she was uncomfortable with SCHWARMER due to his statement about her father performing oral sex.

46. SCHWARMER denied ever making sexual comments about Plaintiff's father and Defendant M. NUGENT despite the multiple witnesses.

47. Despite this denial, SCHWARMER did acknowledge that he had a problem with Plaintiff for allegedly receiving preferential treatment because she is a woman when Plaintiff took the truck to the auto shop because her air conditioning was not working in mid-summer heat, which confused Plaintiff because she simply sought out her vehicle being appropriately fixed. Plaintiff did not expect there to be an uproar from any employee as a result, especially when such was related to her allegedly receiving preferential treatment because she was a woman.

48. Accordingly, because of SCHWARMER'S constant heckling and attacks when Plaintiff used the radio for a specific business reason, Plaintiff stopped using her radio unless completely necessary when it was related to business purposes.

49. Plaintiff personally attempted to diffuse the situation by staying out of SCHWARMER'S way and off the radio so she did not hear his constant harassment, though other employees continued to relay his offensive and harassing comments to Plaintiff.

50. Plaintiff reported this incident to Defendants K. NUGENT and M. NUGENT, who responded by stating that "the guys just need to stop harassing [her]" and that they would have a meeting with all ABC employees about the issue. However, this meeting never took place and the harassment continued unabated.

51. Around May 2021, Hinton pulled Plaintiff aside and told her that another coworker named Jerry (Last Name Unknown) ("Jerry") had called Plaintiff a slew of homophobic and misogynistic slurs. By means of example, Jerry called Plaintiff a "**bull dyke**" on the radio for all surrounding employees to hear.

52. In fact, Hinton told Plaintiff that Jerry had also called her *worse* than "bull dyke" but he did not feel comfortable repeating the additional statements.

53. When Hinton informed Plaintiff of Jerry calling her a bull dyke, Plaintiff again informed Defendants K. NUGENT and M. NUGENT. However, before she could even do so, M. NUGENT called Plaintiff and told her that the job site foreman had called her to complain that Plaintiff had allegedly left the jobsite for a period of 45 minutes.

54. Plaintiff explained to M. NUGENT that she had informed the union dispatcher Danielle (Last Name Unknown) ("Danielle"), that she was on her period and, consequently, had to leave the jobsite and drive to a local Wawa store in order to change her tampon because she could not find any bathroom on site.

55. Danielle informed Plaintiff where the bathroom was only after Plaintiff left the job site. After that day, Plaintiff routinely began using the bathroom at the job site as necessary.

56. Upon information and belief, it was actually Jerry who called the foreman to complain that Plaintiff was not on the job site, in another example of the harassment and retaliation where Defendants and Defendant's employees targeted Plaintiff due to her sex and sexual orientation.

57. Following this incident, Plaintiff immediately called Danielle and told her she wanted to have another meeting with K. NUGENT and M. NUGENT to discuss the ongoing harassment and discrimination.

58. Around this time, Plaintiff's union shop steward, Joe Holzer ("Holzer"), reached out to Plaintiff and asked if she wanted to file a union grievance, advising Plaintiff that the nature of what she may be reporting was very serious and worth documenting.

59. Plaintiff told Holzer she would think about it and return to the shop at the end of the day to discuss her options regarding drafting a grievance.

60. When Plaintiff returned to the shop for the day, K. NUGENT, M. NUGENT, Plaintiff's father, and Jerry were present for a meeting to discuss Plaintiff's complaints.

61. During that meeting, Plaintiff witnessed K. NUGENT ask Jerry why he called Plaintiff a "bull dyke" on the radio, which Jerry wholly denied in response, despite the multiple witnesses to his comments and conduct, both in person and on the radio.

62. After Jerry left the meeting, K. NUGENT approached Plaintiff and encouraged her to not file a union grievance.

63. In fact, K. and M. NUGENT told Plaintiff that because the discriminatory and harassing behavior was reported to Defendants, it would be reported to the union by Defendant ABC, not Plaintiff. However, Plaintiff later found out this information was, in fact, patently false and no report was ever made to the union by Defendants K. and/or M. Nugent.

64. A few days following this meeting, M. NUGENT called Danielle and asked "how many times does a woman have to change her tampon during her period?"

65. M. NUGENT was asking Danielle about another woman's menstrual cycle in attempts to control Plaintiff's time spent taking bathroom breaks.

66. Upon information and belief, M. NUGENT never asked Danielle about how many times a man had to use the bathroom for a necessary bodily function.

67. On or around June 25, 2021 Plaintiff informed M. NUGENT that she was contemplating leaving the job due to the ongoing harassment and discrimination, and even went so far as to put in her two weeks' notice with ABC; however, M. NUGENT ultimately convinced Plaintiff to retract her two weeks' notice.

68. M. NUGENT again assured Plaintiff that the harassment and discrimination would stop immediately because "[he] would make sure of it."

69. Despite Plaintiff's decision to remain with Defendants, she continued to be harassed, humiliated, discriminated, and targeted by Defendant's employees.

70. Around July 2021, Jerry took a personal day off of work. During his day off, Jerry followed Plaintiff to all her job sites, swerving in and out of lanes in front and behind Plaintiff, in attempts to intimidate Plaintiff and falsely report any alleged wrongdoing on Plaintiff's part.

71. Jerry's behavior included following Plaintiff around job sites, leering and glaring at her, and generally creating an intimidating and harassing environment which put Plaintiff in fear for her safety.

72. Once again, Plaintiff addressed her continued concerns with M. NUGENT and stated the comments and conduct were relentless, ongoing, and occurring on an almost daily basis. Plaintiff also informed M. NUGENT that her emotional and mental health was deteriorating, causing her to have anxiety and panic attacks during and after work hours.

73. In response, M. NUGENT reassured Plaintiff that "somehow" the harassment and discrimination would stop, yet nobody addressed Plaintiff's complaints directly with the harassers or took any actual steps to cease the harassment.

74. After this incident, Plaintiff returned to the main office to write a personal statement and incident report about how she planned to leave Defendant due to the constant harassment. However, around when she did so, Danielle informed Plaintiff that whenever an employee wrote an incident report, K. NUGENT simply threw everything into the trash.

75. Around July 19, 2021, Plaintiff was on a jobsite in Newtown, PA. During this time, Plaintiff's truck had a dash camera installed which she believed to be watching and recording her at all times.

76. One day while at that job, Plaintiff went on her regularly scheduled lunch break at Wawa. Upon information and belief, the jobsite foreman, John Wright, called Defendant K. NUGENT and informed her that Plaintiff was leaving the jobsite but did not specify that it was for lunch nor that it was during her regularly scheduled lunch hour.

77. Immediately after arriving at Wawa, Defendant K. NUGENT called Plaintiff and asked if she was working. Plaintiff responded and stated she drove to Wawa to purchase lunch. Plaintiff also told K. NUGENT that she could view the dash cam footage because she was not attempting to hide anything from Defendants.

78. In response, K. NUGENT yelled at Plaintiff and threatened her to return to the job site "or else." K. NUGENT further yelled at Plaintiff and said "you need to keep up with the guys and hurry back to work."

79. Upon information and belief, K. NUGENT never called a male employee during their lunch break and threatened them or insisted that they return to work.

80. Moreover, K. NUGENT demonstrated her discriminatory animus when she implied that Plaintiff could not do the same amount of work as a male because she is a female.

81. Immediately following this telephone conversation, Plaintiff, who was experiencing consistent turmoil and anxiety after being attacked by K. NUGENT, called Danielle crying, and reported the conversation between herself and Defendant K. NUGENT.

82. During that call, Plaintiff asked Danielle why she was being targeted every day when the men on the jobsite regularly drove to Wawa and stopped for food without any issues from

Defendants. In response, Danielle stated that "you're targeted because you are a woman and because Jerry has a problem with you."

83. Immediately following this phone call on July 19, 2021, no longer able to bear the constant discrimination and harassment, Plaintiff informed Defendant K. NUGENT that she could no longer work for Defendant ABC due to the discrimination, harassment, ongoing retaliation, and Defendants' blatant unwillingness to rectify the continuing issues.

84. After submitting her letter of resignation, Plaintiff went to her local union representative, Chris Bushmyer ("Bushmyer"), to file an official grievance herself.

85. After informing Bushmyer of the hostile and discriminatory actions towards her, Bushmyer stated "because you never came to me directly during your employment, my hands are tied."

86. This shocked Plaintiff, as K. NUGENT had previously informed her that any complaint made to her supervisor (specifically K. NUGENT and M. NUGENT) would be reported to the union representative even if Plaintiff did not personally make the grievance to the union representative.

87. Moreover, Bushmyer stated in words or substance to Plaintiff that "I can't even tell you how many times people file grievances against ABC and nothing ever happens."

88. Clamant was shocked by this news and informed a fellow employee, Mike Riley ("Riley"), of the information relayed by Bushmyer. In response, Riley informed Plaintiff of a time when he informed the shop steward, Joe Holzer, that he intended to file a grievance with the union. K. NUGENT overheard this conversation and immediately began screaming at Riley, threatening him to not file a grievance, and yelling that "if you file a grievance you're a fucking pussy."

89. In that instance, K. NUGENT continued screaming and allegedly stated that "you always want to run to the union, don't you?" and "you don't appreciate all we do for you, how dare you try to go to the union!"

90. Accordingly, K. NUGENT had a clear history of continually harassing and retaliating against any employee who threatened the possibility of filing a union grievance.

91. Moreover, K. NUGENT patently lied to Plaintiff and told her that if she complained to herself or M. NUGENT that it would be reported to the union, which Plaintiff discovered was not the case.

92. Accordingly, Defendants constructively terminated Plaintiff as a result of the ongoing discrimination and harassment that no reasonable person in Plaintiff's position should have been expected to endure.

93. The above are just some examples of some of the discrimination, harassment, and retaliation to which Defendants subjected Plaintiff on a continuous and ongoing basis throughout her employment.

94. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

95. As a result of Defendants' discriminatory and retaliatory treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

96. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting conditions.

97. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary

losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

98. Plaintiff further claims aggravation, activation, and/or exacerbation of any pre-existing conditions.

99. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants individually, jointly and severally.

100.    Defendants have established a pattern and practice of discrimination, harassment, and retaliation through their actions.

101.    Plaintiff claims alternatively (in the event that Defendants claim so or the Court determines) that Plaintiff is an independent contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to independent contractors.   Furthermore, in such case, Plaintiff claims that Defendants owed and breached their duty to Plaintiff to prevent the harassment, discrimination, and retaliation, and is therefore liable for negligence.

## COUNT I
## DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(*Not Against Individual Defendants*)

102.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103.    Title VII states in relevant parts as follows: SEC. 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

104.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender (female) and sexual orientation.

105.    As such, Plaintiff has been damaged as set forth herein.

## COUNT II
## HOSTILE WORK ENVIRONMENT HARASSMENT
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(*Not Against Individual Defendants*)

106.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

107.    Title VII states in relevant parts as follows: SEC. 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

108.    Defendants engaged in an unlawful discriminatory practice by subjecting Plaintiff to a hostile work environment because of her sex/gender (female) and sexual orientation, as well as failing to remedy the hostile work environment, in violation of Title VII.

109.    As such, Plaintiff has been damaged as set forth herein.

## COUNT III
## RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

110.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

111.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides

that it shall be an unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice
made an unlawful employment practice by this subchapter, or because [s]he has made a charge,
testified, assisted or participated in any manner in an investigation, proceeding, or hearing
under this subchapter."

112.    Defendants engaged in an unlawful discriminatory practice prohibited by 42 U.S.C.

§2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions, and/or

privileges of her employment because of her opposition to Defendants' unlawful employment

practices.

113.    As such, Plaintiff has been damaged as set forth herein.


### COUNT IV
### DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT


114.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

115.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice:   "(a) For

any employer because of the race, color, religious creed, ancestry, age, sex, national origin or

non-job related handicap or disability or the use of a guide or support animal because of the

blindness, deafness or physical handicap of any individual or independent contractor, to refuse

to hire or employ or contract with, or to bar or to discharge from employment such individual

or independent contractor, or to otherwise discriminate against such individual or independent

contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

116.    Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of Plaintiff's sex/gender and sexual orientation.

117.    Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of the PHRA § 955.

**COUNT V**
**HOSTILE WORK ENVIRONMENT HARASSMENT**
**PENNSYLVANIA HUMAN RELATIONS ACT**

118.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

119.    PHRA § 955 provides that it shall be an unlawful discriminatory practice:   "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

120.    Defendants engaged in an unlawful discriminatory practice by creating and maintaining discriminatory working conditions, and a hostile work environment due to Plaintiff's sex/gender and sexual orientation.

121.    Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of the

PHRA § 955.

## COUNT VI
## RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

122.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

123.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any

person, employer, employment agency or labor organization to discriminate in any manner

against any individual because such individual has opposed any practice forbidden by this act,

or because such individual has made a charge, testified or assisted, in any manner, in any

investigation, proceeding or hearing under this act."

124.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating,

and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the

unlawful employment practices of Plaintiff's employer.

## COUNT VII
## AIDING AND ABETTING
## PENNSYLVANIA HUMAN RELATIONS ACT
(*Against all Individual Defendants only*)

125.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

126.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any

person, employer, employment agency, labor organization or employee, to aid, abet, incite,

compel or coerce the doing of any act declared by this section to be an unlawful discriminatory

practice, or to obstruct or prevent any person from complying with the provisions of this act or

any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

127.     Defendants M. NUGENT, K. NUGENT, and SCHWARMER engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct detailed above.

128.     The individually named Defendants took active part by aiding, abetting, compelling, and inciting the discrimination and harassment described in detail above.

129.     The individual Defendants aided and abetted the campaign of discrimination, harassment and retaliation against Plaintiff due to Plaintiff's sex/gender and sexual orientation, and in retaliation for Plaintiff opposing said discrimination and harassment in the workplace.

**COUNT VII**
**DISCRIMINATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

130.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

131.     The Philadelphia Fair Practices Ordinance § 9-1103(1) provides: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure,

promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

132.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff due to Plaintiff's sex/gender and sexual orientation.

133.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

**COUNT VIII**
**HOSTILE WORK ENVIRONMENT HARASSMENT**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

134.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

135.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

136.     Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia

Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working

conditions, and a hostile work environment due to Plaintiff's sex/gender and sexual orientation.

137.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs

of Philadelphia Fair Practices Ordinance Chapter 9-1100.

## COUNT IX
## RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

138.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

139.      The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be

unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or

otherwise penalize, retaliate or discriminate in any manner against any person because he, she

or it has complied with the provisions of this Chapter, exercised his, her or its rights under this

Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any

manner in any investigation, proceeding or hearing hereunder."

140.     Defendants engaged in an unlawful employment practice in violation of the Philadelphia

Fair Practices Ordinance § 9-1103(1)(g) by discriminating and retaliating against the Plaintiff

because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## COUNT X
## AIDING AND ABETTING
## PHILADELPHIA FAIR PRACTICES ORDINANCE
(*Against all Individual Defendants only*)

141.     Plaintiff hereby incorporates all allegations contained in the above paragraphs as fully as

if they were set forth at length.

142.     The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

143.     Defendants M. NUGENT, K. NUGENT, and SCHWARMER engaged in an unlawful employment practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

144.     The individual Defendants aided and abetted the campaign of discrimination, harassment and retaliation against Plaintiff due to Plaintiff's sex/gender and sexual orientation, and in retaliation for Plaintiff opposing said discrimination and harassment in the workplace.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, individually, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, liquidated damages, statutory damages, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Respectfully Submitted,

**DEREK SMITH LAW GROUP, PLLC**

By: _____
Nathaniel N. Peckham, Esq.
1835 Market Street, Suite 2950
Philadelphia, PA 19103
Tel. (215) 391-4790
nathaniel@dereksmithlaw.com
*Attorneys for Plaintiff Jessica Dauber*

Dated:   May 3, 2023